IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 6, 2014

**STATE OF TENNESSEE v. JOHN BRENT**

**Appeal from the Criminal Court for Shelby County**
**No. 11-04915     Paula Skahan, Judge**

**No. W2013-01252-CCA-R3-CD  - Filed October 21, 2014**

The defendant, John Brent, was convicted of aggravated robbery and aggravated burglary, for which he was sentenced, respectively, to thirty years at 100% and fifteen years at 45%, the sentences to be served concurrently. On appeal, he argues that he is entitled to a new trial because the court erred in allowing into evidence a photograph of a pair of scissors which were similar to those in the victim's home; that the evidence was insufficient to support either of his convictions; and that his sentence is excessive. Following our review, we conclude that the defendant's claims are without merit and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN, J., joined. JOSEPH M. TIPTON, P.J., not participating.

Stephen Bush, District Public Defender; Phyllis Aluko (on appeal) and Lawrence White (at trial), Assistant Public Defenders, for the appellant, John Brent.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Smith, Deputy Attorney General; Amy P. Weirich, District Attorney General; and Jose Leon, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The defendant's convictions resulted from his entering the victim's home without invitation, subduing the victim with a weapon, tying him up, and stealing the victim's motor vehicle, which later was recovered in Atlanta.

The victim, John Stuart, testified that, at the time of the trial, he was 72 years old and a resident of Memphis. He said that, on July 11, 2011, he was sitting on his front porch and conversed with the defendant, who was walking on the sidewalk. The defendant came up the steps of the victim's home and asked for water. The victim went into the house, got a glass of water, and, as he returned to the door, found the defendant had entered his house. After a brief conversation, the defendant "grabbed [the victim] in a bear hug and said get down on your knees." The victim complied by going to the floor and, then, by emptying his pockets, at the defendant's further command. Then, the victim felt "pressure on [his] neck" from "scissors, the end of the barrel of a pistol or what it was at that time." The defendant ordered the victim to undress and tied his hands and feet with twine in the kitchen. The victim "waited a little while," managed to get loose from the twine, saw the defendant had left, looked out the door, and saw his Ford Explorer had been taken. Also taken were his checkbook, $60 cash, a small knife, and his car keys. He estimated that the Ford Explorer was worth about $2000. The victim described the defendant:

> [H]e had a cut . . . maybe 2 inches wide just behind where your watch goes. It was kind of puffy. It healed, you know, was a[n] older cut, but still kind of healed up in a puffy fashion. And then he had a tattoo that I could see. The beginning of a tattoo above the shirt that he was wearing. The starting of one right along here. Probably went on down.

Further, the victim described the scissors which he thought the defendant used as a weapon against him:

> [W]hen I was in the living room during that time, either when I dropped – as I [was] getting ready to drop down on the floor or as I was coming back up to go to the rear bedroom, I got a glimpse of a pair of scissors that he had in his possession, his hand. And I immediately said to myself he has my scissors. He probably got them off the piano. They were all steel, piercing type of scissors that could be used as a weapon. Average size.
>
> I think of a pair of scissors that you'll see in a style shop or barber shop or hair salon, beauty shop. I think they still use scissors like that. These were – had some rust on them. And being in real estate, I manage property from time to time. And we go in and clean up and people will leave things. You know, move out and not take something. And that's where these scissors came from. They had been around the house a few years.

Without objection, the victim testified that a pair of scissors depicted in a photograph, passed to him while he was testifying, were "very similar" to those which had been in his

house:

Q.  Mr. Stuart, we spoke and you have described a pair of scissors; correct?

A.  Right.

Q.  I am going to pass up to you a picture of scissors to see if you recognize them and tell us what you find.

A.  Yeah.  These are very similar to the scissors that I had in the house.  The difference was my scissors had some rust on them.  I don't know about these handles.  If that's plastic handles, mine were steel.

Q.  To make it clear, those are not your scissors; correct?

A.  No, these are not my scissors.  No.

Q.  Not the ones –

A.  We don't know where they are.

Q.  But those are similar to the ones –

A.  But they're similar.  They're similar.  Yeah.  The ones that barbers use and hair stylist[s].  Scissors – kind of like scissors they use.  That's what these scissors looked like.

[THE STATE]:  If we can mark that as an exhibit for the State.

THE COURT:  All right.  Exhibit 4 is a photo of a pair of scissors.

(Exhibit 4 marked and entered.)

THE COURT:  Ladies and gentlemen, just so you understand, Mr. Stuart has stated those are not his pair of scissors.  Those are just to give you an illustration of scissors kind of similar. . . .

Stuart said that he had later received a telephone call from a law enforcement officer in Atlanta, asking if he had given the defendant permission to take his vehicle.  He replied that he had not.

-3-

Officer David Payment testified that he was assigned to the Memphis Police Department Crime Scene Investigation Unit and that he responded to a call to the victim's residence. He arrived at the scene later than other officers and the only item with fingerprints of value, which had not already been touched by others, was a drinking glass. However, he was not able to detect any prints of value on the glass.

Detective D.L. Wareham of the Atlanta Police Department testified that on July 18, 2011, he responded to a stolen vehicle call in downtown Atlanta. At the scene, he found a green Ford Explorer which had been stopped for a traffic violation. Upon checking the registration of the vehicle, officers found that it had been reported stolen in Memphis. The driver of the vehicle told him that he had been given the vehicle by the defendant, who was one of the passengers. The defendant said that the vehicle belonged to a relative in Memphis and gave the name of the victim. Detective Wareham then telephoned the Memphis Police Department and was told that the vehicle had been taken during a home invasion robbery. He then telephoned the victim, who verified that the vehicle had been taken during a home invasion. The victim said he was white, the man who took the vehicle was black, as was the defendant, and they were not relatives.

Sergeant Veronica Wimbley of the Memphis Police Department Robbery Bureau testified that she went to the victim's residence regarding his complaint. Based upon the information he gave her, she put out a BOLO on his vehicle, meaning that officers should be on the lookout for it. From the National Crime Information Center, she received information that the vehicle had been located in Atlanta. Based upon information she received from Atlanta police officers, she arranged a photographic lineup which included persons who had been in the vehicle when it was stopped. From those photographs, the victim identified the defendant as the man who entered his house and robbed him.

Following this testimony, the State rested the case and the defendant did likewise, without presenting proof.

## ANALYSIS

On appeal, the defendant argues that the trial court erred in allowing into evidence a photograph of scissors similar to those used by the defendant during the offenses; that the evidence was insufficient to sustain the convictions for aggravated robbery and aggravated burglary; and that the court erred in sentencing the defendant. We will review these claims.

### I. Photograph of Scissors

The defendant argues that the photograph should not have been admitted into

evidence because it was not of the scissors which had been at the victim's house; the photograph made the scissors appear larger than they actually were; and it was of little probative value.

During the victim's testimony, he said that the scissors in the photograph were "very similar" to the ones which had been at his house but that his scissors had some rust on them and steel, instead of plastic, handles. The trial court then instructed the jury: "[J]ust so you understand, [the victim] has stated those are not his pair of scissors. Those are just to give you an illustration of scissors kind of similar."

The admission of demonstrative exhibits generally lies within the discretion of the trial court, whose decision will not be overturned absent a clear showing of abuse. State v. West, 767 S.W.2d 387, 402 (Tenn. 1989); State v. Delk, 692 S.W.2d 431 (Tenn. Crim. App. 1985); State v. Wiseman, 643 S.W.2d 354, 365 (Tenn. Crim. App. 1982). To be admissible, evidence must be relevant, i.e., "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See Tenn. R. Evid. 401. Relevant evidence, may, however, be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

It was made clear to the jury that the scissors in the photograph were not those which the defendant had used in the crimes. The victim testified as to the differences, and the trial court instructed that the scissors were "kind of similar." Accordingly, we conclude that the court did not error in admitting the photograph.

## II. Sufficiency of the Evidence

The defendant was convicted of aggravated burglary and aggravated robbery. Aggravated burglary occurs when one enters the habitation of another, without consent, with the intent to commit a felony, theft, or assault. Tenn. Code Ann. §§ 39-14-401; -402; -403. The defendant also was convicted of aggravated robbery, the elements of which are set out in Tennessee Code Annotated sections 39-13-401(a) and 39-13-402(a): "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon or [w]here the victim suffers serious bodily injury."

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

As to the State's proof of the offenses, the victim identified the defendant both in a series of photographs as well as in the courtroom during the trial as committing the offenses. He testified that the defendant entered the victim's home without consent and used what appeared to be a weapon, a pair of scissors, in committing the crimes. Additionally, the defendant was in the victim's vehicle when it was located in Atlanta. From all of this, we conclude that a reasonable jury could have determined that the defendant committed both of the offenses.

### III. Sentencing

The trial court explained in detail the bases for the sentencing imposed:

> Mr. Brent, you have an extensive history of criminal convictions since

the age of nineteen involving car jackings, involving robberies, aggravated robberies. You haven't been able to stay out of trouble involving this type of behavior since that time.

This case, while you apparently didn't use a gun, Mr. Stuart couldn't say if it was a gun or not, he felt something hard against the back of his neck, possibly could have been a gun but he couldn't say. He said the scissors were missing from off the top of a shelf or piano or whatever it was, and he thought that's probably what happened.

To your credit you did not harm him seriously as you could have done, but you did terrorize the man, make him strip naked, take items from him personally and then steal his vehicle. And because of your horrible record you are facing such harsh punishment looking at your history as a juvenile it's very unfortunate that apparently you didn't get the very serious help that you needed with your mental health issue as far as according to what the record says you're homicidal and suicidal though ideations on a couple of occasions.

But nonetheless your behavior is something that in society obviously cannot be tolerated. I do not see any way that you will be rehabilitated, and the only thing I can do is keep you off the streets.

So on the charge of aggravated robbery, Class B felony, where you have a prior conviction for aggravated robbery I do sentence you to the maximum of thirty years Tennessee Department of Correction[] at one-hundred percent. You will be eligible for sentencing credits if your behavior warrants that.

I sentence you on the aggravated burglary where you do have more enhancement factors. The only enhancement factor I found on the aggravated robbery was your prior history of criminal conduct as well as the prior similar type of behavior as far as robberies, aggravated robberies.

On the aggravated burglary I also find enhancement factors that you treated the victim with exceptional cruelty and that you did employ a deadly weapon during the commission of the offense I also sentence you to the maximum of fifteen years as a persistent offender, forty-five percent.

I'm not going to run these sentences consecutively. I do think thirty years at one-hundred percent is sufficient for somebody at twenty-eight who

did not come in with a gun as far as the proof showed. I hope that when you're released sometime in your fifties that maybe somehow you won't be as dangerous as you are at this time in your life.

The State has made a compelling argument to give you consecutive sentencing but I'm not going to do it at this time. Your sentence is thirty years at one-hundred percent.

The length of a sentence "within the appropriate statutory range [is] to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). In determining the proper sentence, the trial court must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991); State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

Generally, challenges to a trial court's application of enhancement and mitigating factors are reviewed under an abuse of discretion standard. Bise, 380 S.W.3d at 706. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id.

The trial court may order multiple sentences to run consecutively if it finds by a preponderance of evidence that one or more of the seven factors listed in Tennessee Code Annotated section 40-35-115(b) apply, including that the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. Id. § 40-35-115(b)(4). When the court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it must also find that an extended sentence was necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences reasonably relate to the severity of the offense committed. State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999); State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995). As to

consecutive sentencing, our standard of review is abuse of discretion with a presumption of reasonableness. State v. Pollard, 432 S.W.3d 851, 859-60 (Tenn. 2013).

The defendant's presentence report easily supports the sentences imposed by the trial court. The defendant's lengthy string of convictions began when he was 18, and it appears that his releases upon completion of sentences were soon followed by convictions and imprisonment for new convictions. He was particularly active in 2004, being convicted of one count of aggravated robbery, four counts of robbery, and one count of attempted robbery. It does not appear that he has ever been employed. Accordingly, based upon the facts of the offenses which are the subject of this appeal, his prior criminal record of other crimes of violence, and the reasoning of the trial court in imposing the sentences, we conclude that the court did not err in this regard.

## **CONCLUSION**

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE